IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA



FILED

JAN - 7 2013

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

| | |
|---|---|
| ROBERT PARK ARBUCKLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CIV-11-976-W |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

On November 15, 2012, United States Magistrate Judge Gary M. Purcell issued his Second Supplemental Report and Recommendation, as amended by Order Nunc Pro Tunc [Doc. 63], in this matter and recommended that the Court grant the Motion to Dismiss for Lack of Subject-Matter Jurisdiction filed pursuant to Rule 12(b)(1), F.R.Civ.P., by defendant United States of America. Plaintiff Robert Park Arbuckle, a federal prisoner proceeding pro se, was advised of his right to object, and the matter came before the Court on Arbuckle's Objections to Second Supplemental Report and Recommendation of United States Magistrate Judge [Doc. 64]. Upon review, the Court on December 7, 2013, directed the United States to address certain issues to aid the Court in its resolution of this matter. See Doc. 65.

Having now received the United States' response, the Court, upon de novo review of the record, concurs with Magistrate Judge Purcell's suggested disposition of the United States' motion.

Arbuckle is currently incarcerated at Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno"). He has alleged in his complaint

(1) that in August 2008, he was hired to work at FCI El Reno's dairy as an assistant clerk;

(2) that on August 19, 2008, he "was told by the prison dairy supervisor, [Jeff] Ropp, to leave the dairy and find another job," Doc. 1 at 2, ¶ 7;

(3) that on August 20, 2008, he "was called back to the dairy and told to go out and herd cattle," id. ¶ 8, but "was provided no instruction, training, or warnings," id.; and

(4) that on August 21, 2008, he "was attacked and struck by a large bull while herding." Id. ¶ 9.

Arbuckle has further complained that he was denied immediate medical treatment even though he had sustained "broken ribs, a broken facial bone, and nerve damage to his face as a result of the incident." Id. ¶ 12. He has prayed for damages in the amount of $1,500,000.00 for the pain he has suffered, and continues to suffer, as a result of the United States' "intentional and negligent acts." Id. at 3, ¶ 14.

The issue[1] before the Court is whether it lacks subject matter jurisdiction because Arbuckle's injuries are work-related and his exclusive remedy is therefore under the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126. The IACA provides compensation to federal prisoners "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." Id. § 4126(c)(4).[2]

---

[1]Because this issue is dispositive, the Court has not addressed the alternative ground for dismissal asserted by the United States: Arbuckle has failed to allege sufficient facts to show he is entitled to relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.

[2]E.g., 28 C.F.R. § 301.301(b) ("Compensation may only be paid for work-related injuries or claims alleging improper medical treatment of a work-related injury. This ordinarily includes only those injuries suffered during the performance of an inmate's regular work assignment.").

2

Arbuckle has argued that his injuries are not work-related because he was officially assigned to work as an assistant dairy clerk, not as a cattle herder, and because he had been discharged from his clerical job. He has contended that he was herding cattle at the time of his injuries only because "prison dairy guards in an act of retaliation called him back to the dairy (after he had been fired and told not to return) and he was given a direct order to go out and herd cattle under threat of being placed in the 'hole' if he did not." Doc. 59 at 3.

Although not prepared until April 2012,[3] the inmate injury report that memorialized the August 2008 accident attributed the following statement to Arbuckle: "I was hit by a bull. I would advice [sic] inmates that there were bulls out there before sending them out." Doc. 54-1, Part 1, Block 14.[4]

In that same report, FCI El Reno's Institution Safety Committee ("Committee") concluded that "[c]urrently [there was] insufficient evidence to make a determination whether the injur[ies] were work related." Id. Part 2, Block 4. FCI El Reno's Safety Manager, Don Terrell, recommended "[f]urther review of . . . where [the] injury occurred,"

---

[3] Federal regulations require that "[a]fter initiating necessary action for medical attention, the work detail supervisor shall <u>immediately</u> secure a record of the cause, nature, and exact extent of the injury. The work detail supervisor shall complete a BP-140, Injury Report (Inmate), on all injuries reported by the inmate, as well as injuries observed by staff. . . . The injury report shall contain a signed statement from the inmate on how the accident occurred. The names and statements of all witnesses (e.g., staff, inmates, or others) shall be included in the report. . . ." 28 C.F.R. § 301.105(a)(emphasis added). Although Arbuckle has complained about the delay in the investigation of the incident and in the completion of the injury report, he has provided no authority that this delay itself gives rise to relief.

[4] The inmate injury report noted that Arbuckle had refused to sign the document. See Doc. 54-1, Part 1, Block 14.

id. Block 3, as well as a "[f]ollow up with staff at the dairy . . . in order to determine injury status." Id.

The Committee subsequently reviewed the incident, and on May 16, 2012, it found that

> [a]lthough Inmate Arbuckle failed to follow instructions provided [to him] the [C]ommittee has made a determination based upon the information provided that this was a work related injury. This conclusion was reached after further review.

Doc. 47-1, Part 2, Block 4.[5]

The IACA defines "work-related injury" as

> any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment.

28 C.F.R. § 301.102(a).

The record is undisputed that Arbuckle's injuries on August 21, 2008, occurred while he was in FCI El Reno's dairy unit—an assigned work area, and during scheduled working

---

[5] Arbuckle was advised at the time the review was completed that

> [t]he final determination of the work relatedness of [ ]his injury [was] . . . subject to review by the Inmate Accident Compensation Committee upon the filing of a claim for Inmate Accident Compensation due to a physical impairment resulting from the injury.

Doc. 47-1.

hours.[6] The record is further undisputed that Arbuckle was herding cattle at the direction of an FCI El Reno supervisor.[7]

The United States Supreme Court in United States v. Demko, 385 U.S. 149 (1966), held that the IACA is sufficiently comprehensive to provide the exclusive remedy for federal prisoners who are injured in connection with prison work assignments. As case law establishes, the IACA, as the exclusive remedy for those injuries, precludes tort claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., for physical impairment resulting from the work-related injuries themselves and for any negligent treatment of those injuries. E.g., Smith v. United States, 561 F.3d 1090, 1099 (10th Cir. 2009); Alvarez v. Gonzalez, 155 Fed. Appx. 393, 395 (10th Cir. 2005)

---

[6]Bureau of Prisons ("BOP") Program Statement 1600.09, Chapter 1, Paragraph K.1 provides that "[w]ork-relatedness for compensation purposes is concluded by determining whether the injury took place at the assigned workplace during assigned hours and was incident to the employment. The assigned workplace is any place the inmate is authorized to be performing an assignment, not just the work station."
 The incident allegedly occurred at 7:00 a.m. See Doc. 54-1, Part 1, Block 6. "Normal work hours" for a "Clerk" include "7:00 a.m. to 11:00 a.m." See Doc. 64-1, Block 8. "Normal work hours" for a "Herder" include "6:00 a.m. to 11:00 a.m." See Doc. 64-2, Block 8.

[7]Pursuant to BOP Program Statement 4600.02 that "prescribe[s] the standard management of farm operations within the . . . [BOP]," prior to commencement of work within a BOP farm department, an inmate must execute a BP-S574.052 Position Description. See BOP Program Statement 4600.02, Chapter 4, Paragraph 7(a). "The job description shall explain the exact duties of the position and include a brief explanation of work routines to be followed." Id.
 On August 12, 2008, Arbuckle executed a Position Description for "Clerk" at pay grade 2. See Doc. 64-1 at 2, Blocks 3, 4. "Major duties/[r]esponsibilities" included both clerical and non-clerical ("[s]weeps and mops floors, empties trash and maintains general cleanliness and tidiness in dairy offices") duties. Id. Block 6. A clerk would also "be required to perform other duties as assigned by [the] Dairy Supervisor." Id.
 After careful consideration, the Court finds that the absence of a BP-S574.052 Position Description executed by Arbuckle for the position of "Herder" at the lower pay grade 3 does not negate the applicability of the IACA at this stage of the proceedings. Case law teaches that IACA coverage is not dependent on job description, but rather on whether the inmate was injured "in the performance of an assigned prison task in a federal penitentiary." United States v. Demko, 385 U.S. 149, 149 (1966).

2009); Alvarez v. Gonzalez, 155 Fed. Appx. 393, 395 (10th Cir. 2005)(cited pursuant to Tenth Cir. R. 32.1). See 28 C.F.R. § 301.319 (inmates subject to IACA barred from recovery under FTCA); id. § 301.301(b) (compensation paid for claims alleging improper medical treatment of work-related injuries).

Accordingly, the Court, under the standards that govern motions under Rule 12(b)(1), supra,

(1) FINDS that Arbuckle's exclusive remedy is the IACA[8] and that he is therefore barred from pursuing his claims in this lawsuit under the FTCA;[9]

---

[8]Under the IACA, two types of compensation are potentially available to federal prison inmates. The first type is "lost-time wages," which "may be awarded . . . for work-related injuries resulting in time lost from the work assignment." 28 C.F.R. § 301.101(b); e.g., id. § 301.201 et seq.

The second type is "inmate accident compensation," which "may be awarded to former federal inmates . . . for physical impairment . . . resultant from injuries sustained while performing work assignments . . . ." Id. § 301.101(a). "No compensation for work-related injuries resulting in physical impairment shall [however] be paid prior to an inmate's release." Id. § 301.301(a).

Rather, under the IACA, "[n]o more than 45 days prior to the date of the inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual physical impairment exists as a result of a[ ] . . . work-related injury [may] . . . submit a FPI Form 43, Inmate Claim for Compensation on Account of Work Injury." Id. § 301.303(a). The inmate-claimant "shall submit to a medical examination to determine the degree of physical impairment," id. § 301.303(c), and if he refuses or fails to do so, he forfeits his right to compensation. E.g., id.

If the inmate's "claim . . . is approved, the amount of compensation shall be based upon the degree of physical impairment at the time of . . . [his] release . . . . No claim for compensation will be approved if full recovery occurs while the inmate is in custody and impairment remains at the time of release." Id. § 301.314(a).

Arbuckle is not scheduled for release from incarceration until May 9, 2015. Accordingly, he still has a remedy potentially available to him under the IACA for any residual physical impairment as a result of his work-related injuries.

[9]Arbuckle filed a tort claim pursuant to the FTCA with the BOP on March 29, 2010, seeking $1,500,000.00 in damages. See Doc. 30-2. By letter dated August 6, 2010, the BOP denied the tort claim, finding "no indication [that Arbuckle had] . . . sustained an injury caused by the negligence of an officer or employee of the United States Government acting with the scope of employment." Doc. 30-3 at 1.

On January 17, 2011, Arbuckle requested the BOP to reconsider its decision. See Doc. 30-4. By letter dated March 1, 2011, the BOP denied Arbuckle's request for reconsideration on the grounds that his claim was time-barred. See Doc. 30-5.

(2) in so finding, ADOPTS the Second Supplemental Report and Recommendation [Doc. 62] issued on November 15, 2012;

(3) GRANTS to the extent stated the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction [Doc. 54] filed on October 4, 2012; and

(4) DISMISSES this matter without prejudice.

ENTERED this 7th day of January, 2013.

LEE R. WEST
UNITED STATES DISTRICT JUDGE